# EXHIBIT B
# (Complaint)

19STCV35237
Assigned for all purposes to: Stanley Mosk Courthouse, Judicial Officer: Elizabeth Allen White

1  Timothy J. Walton, SBN 184292
2  Jim Twu, SBN 175032
   WALTON TWU LLP
3  9515 Soquel Drive, Suite 207
4  Aptos, CA 95003-4137
   Phone: (831) 685-9800
5  Fax: (650) 618-8687
6
   Thomas Valfrid Anderson, SBN 125006
7  J. Daniel Jung, SBN 243436
   ANDERSON & JUNG
8  21600 Oxnard Street, Suite 1030
9  Woodland Hills, CA 91367
   Phone: (310) 400-9740
10
11 *Attorneys for Plaintiffs*
12
           SUPERIOR COURT, STATE OF CALIFORNIA
13
           COUNTY OF LOS ANGELES, CENTRAL DISTRICT
14
                    (UNLIMITED JURISDICTION)
15
16
17                                        ) Case No.: 19STCV35237
                                          )
18 JAMES ANDREWS,                         )
   CARMEN ANDREWS, and                    )
19 EMILY PARKS,                           ) COMPLAINT FOR VIOLATIONS OF
                                          ) CALIFORNIA RESTRICTIONS ON
20         Plaintiffs,                    ) UNSOLICITED COMMERCIAL EMAIL
21                                        ) (Cal. Bus. & Prof. Code § 17529.5)
       v.                                 )
22                                        )   1. Cal. Bus. & Prof Code § 17529.5
23 SINCERELY, LLC, a Florida limited liability )      (a)(2)
   company, and                           )
24 VERDE MARKETING LLC, a Kansas limited )
   liability company, and                 )
25                                        )   2. Cal. Bus. & Prof Code § 17529.5
                                          )      (a)(3)
26                                        )
27 DOES 1-100,                            )
          Defendants.                     )   DEMAND FOR JURY TRIAL
28                                        )
29                                        )
                                          )
30 _____)
31

---
**1**

**COMPLAINT**

## I. NATURE OF THE ACTION

1. This action arises out of SINCERELY, LLC and VERDE MARKETING LLC. ("Defendants"), in concert with others, advertising in at least 452 unlawful unsolicited commercial emails ("spams") that violate Section 17529.5 of the California Business & Professions Code. Plaintiffs believe that there may be more emails that were transmitted to Plaintiffs which advertised Defendants and will be identified as part of discovery.

2. Plaintiffs are informed and believe and thereon allege that SINCERELY, LLC owns and operates the web sites *securespeedyloans.com, mymegaloan.com, redsphereloans.com, fast5kloans.com, 247loanpros.com, loans5000.com,* and *loansonline.direct.*

3. Plaintiffs are informed and believe and thereon allege that SINCERELY, LLC engages numerous third party advertising networks and affiliates (also known as "publishers") to advertise for SINCERELY, LLC. Plaintiffs are informed and believe and thereon allege that some of these affiliates send millions of unwanted and unlawful commercial email messages to recipients that did not give consent to receive them. Many of the emails included false and/or misrepresented headers including subject line headers. SINCERELY, LLC is strictly liable for the actions of its networks and affiliates.

4. Plaintiffs are informed and believe and thereon allege that VERDE MARKETING, LLC owns and operates the web sites *bluesky-financial.com, moneynowusa.net, harrison-financial.com, rivertreefinancial.net, westwoodfinancial.net, bluestreakloans.com, quickloans.cash, springloans.net, sydney-financial.com* and *prismloans.com.* Plaintiffs are informed and believe and thereon allege that VERDE MARKETING, LLC engages numerous third party advertising networks and affiliates (also known as "publishers") to advertise for VERDE MARKETING, LLC. Plaintiffs are informed and believe and thereon allege that some of these affiliates send millions of unwanted and unlawful commercial email messages to recipients that did not give consent to receive them. Many of the emails included false and/or misrepresented headers including subject line headers. VERDE MARKETING, LLC is strictly liable for the actions of its networks and affiliates.

5. Plaintiffs are informed and believe and thereon allege that Defendants VERDE MARKETING, LLC and SINCERELY, LLC both hired the same person or persons to send some of the emails at issue in this action. Plaintiffs seek to recover statutory liquidated damages where the emails advertised Defendants' web sites and the emails contained false and/or

deceptive information contained in or accompanying the email headers, and/or deceptive subject lines, within one year prior to the filing of this Action or after the filing of this Action. Plaintiffs seek statutory damages, equitable relief, attorneys' fees and costs pursuant to statute.

## II. PARTIES

6. Plaintiff James Andrews is an individual who is a resident of the State of California and who receives email on a computer located within California. He received at least 164 unlawful unsolicited commercial emails (defined above as "spams" sent by "spammers") linking to web pages at Defendants' web sites. He did not give direct consent to any of the Defendants to send him any commercial email advertising.

7. Plaintiff Carmen Andrews is an individual who is a resident of the State of California and who receives email on a computer located within California. She received at least 275 unlawful unsolicited commercial emails linking to web pages at Defendants' web sites. She did not give direct consent to any of the Defendants to send her any commercial email advertising.

8. Plaintiff Emily Parks is an individual who is a resident of the State of California, county of Los Angeles and who receives email on a computer located within California. She received at least 13 unlawful unsolicited commercial emails linking to web pages at Defendants' web sites. She did not give direct consent to any of the Defendants to send her any commercial email advertising.

9. Plaintiffs are informed and believe and thereon allege that the domain names for all of the Defendants' web sites were, and still are, proxy registered to hide the identity of the owners and operators.

10. The web pages at Defendants' web sites advertise payday loans.

11. Plaintiffs are informed and believe and thereon allege that the web pages at the domains *securespeedyloans.com, mymegaloan.com, redsphereloans.com, fast5kloans.com, 247loanpros.com, loans5000.com,* and *loansonline.direct,* are owned and operated by Defendant SINCERELY, LLC.

12. Plaintiffs are informed and believe and thereon allege that the web pages at the domains *bluesky-financial.com, moneynowusa.net, harrison-financial.com, rivertreefinancial.net, westwoodfinancial.net, bluestreakloans.com, quickloans.cash, springloans.net, sydney-*

3

**COMPLAINT**

*financial.com* and *prismloans.com,* are owned and operated by Defendant VERDE MARKETING, LLC.

13. Plaintiffs are informed and believe and thereon allege that Defendant SINCERELY, LLC is, and was at all relevant times, a Florida limited liability company, headquartered in and doing business in Boca Raton, Florida.

14. Plaintiffs are informed and believe and thereon allege that Defendant VERDE MARKETING, LLC is, and was at all relevant times, a Kansas limited liability company, headquartered in and doing business in Overland Park, Kansas.

15. Plaintiffs do not know the true names or legal capacities of the Defendants sued herein as DOES 1 through 100, inclusive, and therefore sue these Defendants under such fictitious names. Plaintiffs will amend this Complaint to allege their true names and capacities when ascertained. Plaintiffs are informed and believe and thereon allege that each fictitiously named Defendant is responsible in some manner for the matters alleged herein, and that Plaintiffs' injuries and damages alleged herein were proximately caused by such conduct.

16. Plaintiffs are informed and believe and thereon allege that the Defendants were not required in any way to work together but that they chose to do so in pursuit of monies, and that the fictitious DOE Defendants were at all relevant times acting as actual agents, captive agents or brokers, conspirators, ostensible agents, partners, brokers and/or joint venturers of each other, and that all acts alleged herein occurred within the course and scope of said agency, partnership, joint venture, conspiracy and/or enterprise, and with the express and/or implied permission, knowledge, consent, authorization and ratification of Defendants; however, this allegation is pleaded as an "alternative" theory wherever not doing so would result in a contradiction with other allegations.

17. Plaintiffs are informed and believe that if Defendants were not agents of each other, then Defendants were in conspiracy to advertise in unlawful emails sent to millions of innocent victims in California while hiding their identities. Plaintiffs are informed and believe and thereon allege that Defendants made agreements to aid and abet in the sending of unlawful commercial email messages and that each gave substantial assistance and/or encouragement to that end, and that the conduct of Defendants was a substantial factor in causing harm to Plaintiffs.

18.     Where Plaintiffs make allegations in this Complaint based on information and belief, Plaintiffs are actually informed and believe the allegations. Whenever allegations in this Complaint are contrary or inconsistent, such allegations shall be deemed alternative.

### III. JURISDICTION AND VENUE

19.     Plaintiff James Andrews is a California resident who received the emails in California. Thus, he has been harmed in California. *Calder v. Jones,* 465 US 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984).

20.     Plaintiff Carmen Andrews is a California resident who received the emails in California. Thus, she has been harmed in California. *Ibid.*

21.     Plaintiffs Emily Parks is a California resident and resides in the city of Los Angeles, California, who received the emails in California. Thus, she has been harmed in California. *Ibid.*

22.     Plaintiffs are informed and believe and thereon allege that Defendant SINCERELY, LLC is, and was at all relevant times, a Florida limited liability company, but has not registered with the California Secretary of State to do business in California. Additionally, the terms and conditions of its websites require all claims against it to be litigated in Los Angeles county.

23.     Plaintiffs are informed and believe and thereon allege that Defendant VERDE MARKETING, LLC is, and was at all relevant times, a Kansas limited liability company, but has not registered with the California Secretary of State to do business in California.

### IV. TECHNICAL BACKGROUND

24.     "A 'domain name' is defined in the anti-spam Law as an 'alphanumeric designation that is registered with or assigned by any domain name registrar as part of an electronic address on the Internet.'" *Balsam v. Trancos, Inc.,* 203 Cal.App.4th 1083, 1090 fn. 6 (2012) (quoting California Business & Professions Code § 17529.1 subd. (e).)

25.     "WHOIS" refers to the means of determining the identity of a domain registrant. "Technically, WHOIS is not the database, itself, but a protocol for submitting a query to a database in order to find contact information for the owner of a domain name." *Solid Host NL v. NameCheap,* Inc., 652 F.Supp. 2d 1092, 1095 fn. 3 (C.D.Cal. 2009) (citing Matthew Bierlin & Gregory Smith, *Privacy Year in Review: Growing Problems with Spyware and Phishing,*

*Judicial and Legislative Developments in Internet Governance, and the Impacts on Privacy,* 1 I/S: J.L. & POL'Y FOR INFO. SOC'Y 279, 313 (2005).).

26. "To secure the creation, registration, and use of a domain name, one must first assent to the registrar's contract. In addition to the payment of a small fee, the contract requires a potential registrant to agree to (1) provide and maintain current and accurate identifying information..." *In re Forchion*, 198 Cal.App.4th 1284, 1308-09 (2011).

## V. THE UNLAWFUL SPAMS

### A. The Emails at Issue are "Spams"

27. Plaintiffs received the unsolicited commercial email at their California electronic mail addresses.

28. The emails at issue are "commercial email advertisements"[1] because they advertise various consumer products sold at the various web sites owned by the Defendants. The emails are "unsolicited commercial email advertisements"[2] because Plaintiffs never gave any of the Defendants "direct consent"[3] to send them commercial emails, nor did Plaintiffs have a "preexisting or current business relationship"[4] with any of the Defendants.

---

[1] "'Commercial e-mail advertisement' means any electronic mail message initiated for the purpose of advertising or promoting the lease, sale, rental, gift offer, or other disposition of any property, goods, services, or extension of credit." Bus. & Prof. Code § 17529.1(c).

[2] "'Unsolicited commercial e-mail advertisement' means a commercial e-mail advertisement sent to a recipient who meets both of the following criteria: (1) The recipient has not provided direct consent to receive advertisements from the advertiser. (2) The recipient does not have a preexisting or current business relationship, as defined in subdivision (*l*), with the advertiser promoting the lease, sale, rental, gift offer, or other disposition of any property, goods, services, or extension of credit." Bus. & Prof. Code § 17529.1(o).

[3] "'Direct consent' means that the recipient has expressly consented to receive e-mail advertisements *from the advertiser*, either in response to a clear and conspicuous request for the consent or at the recipient's own initiative." Bus. & Prof. Code § 17529.1(d) (emphasis added).

[4] "'Preexisting or current business relationship,' as used in connection with the sending of a commercial e-mail advertisement, means that the recipient has made an inquiry and has provided his or her e-mail address, or has made an application, purchase, or transaction, with or without consideration, regarding products or services offered by the advertiser. []" Bus. & Prof. Code § 17529.1(*l*).

B. **Generic "From Names" Misrepresent *Who* is Advertising in the Spams and Violate Business & Professions Code § 17529.5(a)(2)**

29. Business & Professions Code § 17529.5(a)(2) prohibits deceptive information in email headers.

30. Plaintiffs are informed and believe and thereon allege that the text in the "From Name" field (part of the email headers) in the instant spams is deceptive.

31. Plaintiffs do not insist on any *particular* label (*e.g.,* "Sincerely LLC," "Verde Marketing, LLC," etc.) in the From Name field. Rather, Plaintiffs contend that the text, whatever it is in the From Name header, cannot be misleading. The From Name is important to an email user, because in almost all email programs, the inbox view only displays a list of emails, showing the From Name, Subject Line, and date. Therefore, even if the body of the email identifies the advertiser, the recipient will not know that until s/he has already clicked to open the email. The From Name is one of the only clues a recipient has about the identity of the sender of the email.

32. Here, the From Names all contain deceptive generic terms that are *not* the Defendants.

33. James Andrews received at least 164 spams between October 2018 and August 2019, inclusive, advertising Defendants with a variety of falsified or misrepresented From Names.

34. Carmen Andrews received at least 275 spams between October 2018 and August 2019, inclusive, advertising Defendants with a variety of falsified or misrepresented From Names similar to James Andrews.

35. Emily Parks received at least 13 spams between May 2019 and August 2019, inclusive, advertising Defendants with a variety of falsified or misrepresented From Names similar to James Andrews.

36. In *Balsam v. Trancos Inc.,* the Court of Appeal of the First District affirmed in all respects the trial court's statement of decision. *Balsam, supra,* 203 Cal. App. 4th at 1088. The court confirmed that generic From Names that "do not exist or are otherwise misrepresented [when they] do not represent any real company and cannot be readily traced back to the true owner/sender" violate the statute, even when the advertiser's true address appears in the body of the email. The court affirmed the award of $1,000 liquidated damages per spam for the spams with From Names "Paid Survey," "Your Business," "Christian Dating," "Your Promotion," "Bank Wire Transfer Available," "Dating Generic,' and "Join Elite," but *not* "eHarmony" (because the From Name identified eHarmony). *Id.* at 1093.

## C. Sending Domain Names Registered So As To Not Be Readily Traceable to the Sender Violate Business & Professions Code § 17529.5(a)(2)

37. Business & Professions Code § 17529.5(a)(2) prohibits misrepresented information contained in or accompanying email headers. In the *Balsam v. Trancos* case, the Court of Appeal held:

> [W]here, as in this case, the commercial emailer intentionally uses . . . domain names in its headers that neither disclose the true sender's identity on their face nor permit the recipient to readily identify the sender, . . . such header information *is* deceptive and *does* constitute a falsification or misrepresentation of the sender's identity. . . .
>
> Here, the domain names were *not* traceable to the actual sender. The header information is "falsified" or "misrepresented" because Trancos deliberately created it to prevent the recipient from identifying who actually sent the message. . . . an email with a made-up *and untraceable* domain name affirmatively *and falsely* represents the sender has no connection to Trancos.
>
> Allowing commercial emailers like Trancos to conceal themselves behind untraceable domain names amplifies the likelihood of Internet fraud and abuse-- the very evils for which the Legislature found it necessary to regulate such emails when it passed the Anti-spam Law.
>
> We therefore hold, consistent with the trial court's ruling, that header information in a commercial email is falsified or misrepresented for purposes of section 17529.5(a)(2) when it uses a sender domain name that *neither* identifies the actual sender on its face *nor* is readily traceable to the sender using a publicly available online database such as WHOIS.

*Balsam*, supra, 203 Cal. App. 4th at 1097-1101 (emphasis in original).

38. Plaintiffs are informed and believe and thereon allege that the WHOIS records for almost all the sending domains contain either proxy registered or false information regarding the names and addresses of the actual domain owners and therefore are not traceable to the actual senders.

39. Plaintiffs are informed and believe and thereon allege that there is no database online where an email recipient could find any Defendant by searching for or tracing From Names.

## D. The Email Bodies Do Not Identify the Advertiser or the Sender

40. *Rosolowski v. Guthy-Renker LLC*, 230 Cal. App. 4th 1403, 1407 (2014) holds that a header line in a commercial email advertisement does not misrepresent the identity of the sender merely because it does not identify the official name of the entity which sent the email, or merely because it does not identify an entity whose domain name is traceable from an online database,

provided the sender's identity is readily ascertainable from the body of the email. However, text of advertisements here are not in the body of the email.

41. The advertisements are not in the body of the email itself but remotely hosted on Defendants' servers.

42. Even after downloading the images, a substantial majority of the advertisements do not identify the advertiser and advertise categories of products or services. To the extent there is an address in the actual body of these emails, a substantial majority of the information is false including but not limited to: non-existent addresses, private mail boxes, incomplete addresses or addresses that result in returned mail.

E. **Using Subject Lines that Are False Violates Business & Professions Code § 17529.5(a)(3)**

43. Business & Professions Code § 17529.5(a)(3) states:

> The e-mail advertisement has a subject line that a person knows would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message.

44. Plaintiffs are informed and believe and thereon allege that the emails at issue here contain misleading subject lines by implying a preexisting business relationship with the recipient when the subject matter of the emails seeks to create a new business relationship.

F. **Plaintiffs Sue for Statutory Liquidated Damages**

45. The California Legislature defined liquidated damages to be $1,000 per spam. Bus. & Prof. Code § 17529.5(b)(1)(B)(ii).

46. Plaintiffs' rightful and lawful demand for liquidated damages in the amount of $1,000 per email is necessary to further the California legislature's objective of protecting California residents from unlawful commercial email messages.

47. Section 17529.5 does not require Plaintiffs to quantify their actual damages, allege or prove reliance on the advertisements contained in the spams, or purchase the goods and services advertised in the spams. Recipients of unlawful spam have standing to sue and recover liquidated damages. Bus. & Prof. Code § 17529.5(b)(1)(A)(iii); *Hypertouch v. ValueClick, Inc.*, 192 Cal. App. 4th 805, 820, 822-23, 828 (2011). Plaintiffs do not seek actual damages in this Action, only liquidated damages. Bus. & Prof. Code § 17529.5(b)(1)(B).

48. Plaintiffs are informed and believe and thereon allege that the liquidated damages for unlawful email are comparable with damages in other areas of consumer protection law such as the statutory damages for unsolicited commercial faxes pursuant to California Business & Professions Code § 17538.43(b) and 47 U.S.C. § 227 *et seq*.

49. Plaintiffs are informed and believe and thereon allege that Defendants have not established and implemented, with due care, practices and procedures reasonably designed to effectively prevent unsolicited commercial email advertisements in violation of Business & Professions Code § 17529.5.

50. Even if Defendants had any practices and procedures to prevent advertising in unlawful spam, such practices and procedures were not reasonably designed so as to be effective.

51. Plaintiffs are informed and believe and thereon allege that the false and deceptive elements of these spams represent willful acts, not clerical errors.

### G. **Defendants Are Strictly Liable for Spams Sent By Others**

52. Advertisers are strictly liable for advertising in spams, regardless of whether an advertiser knew that the spams were sent, and even if contracted third parties hit the Send button.

> There is a need to regulate the advertisers who use spam, as well as the actual spammers because the actual spammers can be difficult to track down due to some return addresses that show up on the display as "unknown" and many others being obvious fakes and they are often located offshore.
>
> The true beneficiaries of spam are the advertisers who benefit from the marketing derived from the advertisements.

Bus. & Prof. Code § 17529(j), (k). No one forced Defendants to outsource advertising to third party spammers, and in *Hypertouch*, the court held that advertisers are *strictly liable* for advertising in false and deceptive spams, even if the spams were sent by third parties.

> *[S]ection 17529.5* makes it unlawful for a person or entity "to advertise in a commercial email advertisement" that contains any of the deceptive statements described in *subdivisions (a)(1)-(3)*. Thus, by its plain terms, the statute is not limited to entities that actually send or initiate a deceptive commercial email, but applies more broadly to any entity that advertises in those emails.
>
> Thus, like other California statutes prohibiting false or misleading business practices, the statute makes an entity *strictly liable* for advertising in a commercial email that violates the substantive provisions described in section 17529.5, subdivision (a) *regardless of whether the entity knew that such emails had been sent* or had any intent to deceive the recipient.

**10**
**COMPLAINT**

*Hypertouch, supra,* 192 Cal. App.4th at 820-21 (emphasis added). The court did not find that this was an arbitrary requirement; rather, the court identified sound policy reasons behind the legislature's decision to create a strict liability statute:

> [I]mposing strict liability on the advertisers who benefit from (and are the ultimate cause of) deceptive emails, forces those entities to take a more active role in supervising the complex web of affiliates who are promoting their products.

*Id.* at 829. *Hypertouch* was not an anomaly; it confirmed the general trend in anti-spam litigation in California and federal courts.

## FIRST CAUSE OF ACTION
### [Violations of California Restrictions on Unsolicited Commercial Email, California Business & Professions Code § 17529.5(a)(2)]
### (Against All Defendants)

53. Plaintiffs hereby incorporate the foregoing paragraphs as though set forth in full herein.

54. Defendants advertised in unlawful spams sent to the email addresses of Plaintiffs in California.

55. Each and every spam had materially misrepresented and/or deceptive information contained in or accompanying the headers in violation of Business & Professions Code § 17529.5(a)(2), due to the use of misrepresented From Names and/or From Email Addresses containing domain names registered so as to not be readily traceable to the sender.

56. The federal CAN-SPAM Act, 15 U.S.C. §§ 7701 *et seq.*, 18 U.S.C. § 1037 *et seq.* ("CAN-SPAM") sets the national standard for what constitutes "materially false or materially misleading header information". *Hypertouch, supra,* 192 Cal. App. 4th at 829; *Kleffman v. Vonage Holdings Corp.* (2010) 49 Cal. 4th 334, 340 fn. 5. Therefore, if header information is materially false or misleading under CAN-SPAM, the headers are materially "falsified, misrepresented, or forged" under California Business & Professions Code 17529.5(a)(2).

57. Header information is materially false or materially deceptive under Section 7704(a)(1) where the "From Name" is misleading in that it is designed to induce the recipient to open an email under a false pretense. The "From Lines" in the emails at issue in this action misrepresent information and/or deceive regarding the actual sender or advertiser.

58. Header information is materially false or materially deceptive under 15 U.S.C. 7704(a)(1) where it contains a generic "From Name" and the email is sent from a privacy-protected domain name, such that the recipient cannot identify the sender from the "From Name" or the publicly available WHOIS information, or where the WHOIS information is false, inaccurate or misleading.

59. Here, all the emails contained a generic "From Name" and originated from a domain with, proxy registered, false, inaccurate or misleading WHOIS information. Accordingly, these emails violate 15 U.S.C. § 7704(a)(1).

60. The CAN-SPAM Act makes it unlawful to send email messages that contain, or are accompanied by, materially false or materially misleading header information. 15 U.S.C. § 7704(a)(1).

61. The registration and use of a domain is a representation that the registrar will comply with applicable terms of service of the domain registrar.

62. "Header information that is technically accurate but includes an originating electronic mail address, domain name, or Internet Protocol address the access to which for purposes of initiating the message was obtained by means of false or fraudulent pretenses or representations shall be considered materially misleading." 15 U.S.C. § 7704(a)(1)(A).

63. An email violates Section 7704(a)(1)(A) where the domain used to send the email was registered (i.e., obtained) or used for a purpose that violates the domain registrar's terms of service.

64. An email sent from such a domain violates the law regardless of whether the email contains a header that is technically accurate.

65. All of the emails in question originated from sender domains that were proxy registered or used for purposes that violate the corresponding registrar's terms of service, despite the fact that the registration and use of the domain was a representation that such would be consistent with the terms of service.

66. All of the emails in question originated from sender domains with false addresses in the WHOIS database.

67. The use of domain names that were obtained by means of false or fraudulent pretenses or false representations in an email header renders that email header materially misleading as a matter of law. 15 U.S.C. § 7704(a)(1)(A).

68.    Plaintiffs are informed and believe and thereon allege that that each and every one of the complained of spam utilized domain names in the header that were obtained by the means of false or fraudulent pretenses or false representations.

69.    Each of the emails identified above violates § 7704(a)(1)(A) as set forth herein.

70.    Plaintiffs are informed and believe and thereon allege that all of the emails use hypertext mark up language ("HTML") in the body which contain remote images, which are not part of the email body but rather a link to a web server that could be anywhere on the Internet and controlled by any unknown third party. Many email clients automatically block remote images which prevents recipients from seeing the sender before opening the email.

71.    Remote images are not actually part of the email body, but rather a link to a web server that could be anywhere on the Internet and controlled by Defendants. See *ZooBuh, Inc. v. Better Broadcasting, LLC* 2013 U.S. Dist. LEXIS 77033 *22 n. 29 (D. Utah May 31, 2013.)

72.    Some spammers use remote hosted images to detect when emails are opened to detect active email addresses so that the spammer can either resell the email address and/or direct more emails to active email addresses which open emails.

73.    Many email clients, including those of Plaintiffs, automatically block remote hosted images in spam as a security measure to prevent spammers from detecting active email addresses.

74.    The use of remote hosted images permits the senders to make the emails self-destructing emails to hide identity of Defendants so as to avoid liability for their knowing unwanted and illegal activities.

75.    Plaintiffs are informed and believe and thereon allege that the senders of the emails at issue in this action are not apparent in the body of any of the emails whether the remote images are blocked or unblocked.

76.    The California legislature set liquidated damages at One Thousand Dollars ($1,000) per email. Plaintiffs pray for judgment against all Defendants herein for liquidated damages as set forth in the Prayer for Relief.

77.    Defendants have not established and implemented, with due care, practices and procedures to effectively prevent advertising in unlawful spams that violate Section 17529.5 that would entitle them to a reduction in statutory damages.

78.    Plaintiffs seek reimbursement of attorneys' fees and costs as authorized by Section

17529.5(b)(1)(C).

79.    The attorneys' fees provision for a prevailing spam recipient is typical of consumer protection statutes and supported by California Code of Civil Procedure § 1021.5. By prosecuting this action, Plaintiffs expect to enforce an important right affecting the public interest and thereby confer a significant benefit on the general public or a large class of persons. The necessity and financial burden of private enforcement is such as to make the award appropriate, and the attorneys' fees should not, in the interest of justice, be paid out of the recovery of damages.

## SECOND CAUSE OF ACTION

**[Violations of California Restrictions on Unsolicited Commercial Email,
California Business & Professions Code § 17529.5(a)(3)]
(Against All Defendants)**

80.    Plaintiffs hereby incorporate the foregoing paragraphs as though set forth in full herein.

81.    Defendants advertised in unlawful spams sent to the email addresses of Plaintiffs in California.

82.    The spams contain or are accompanied by misleading subject lines in violation of Business & Professions Code § 17529.5(a)(3).

83.    Defendants use of false subject lines is deceptive as it falsely indicates that they have a preexisting business relationship with the Plaintiffs and conceals the fact that the bodies of the email are unsolicited commercial email advertisements.

84.    Defendants' use of these false subject lines is a method to trick recipients into opening the spam.

85.    The California legislature set liquidated damages at One Thousand Dollars ($1,000) per email. Plaintiffs pray for judgment against Defendants herein for liquidated damages as set forth in the Prayer for relief.

86.    Defendants have not established and implemented, with due care, practices and procedures to effectively prevent advertising in unlawful spams that violate Section 17529.5 that would entitle them to a reduction in statutory damages.

87. Plaintiffs seek reimbursement of attorneys' fees and costs as authorized by California Business & Professions Code Section 17529.5(b)(1)(C) and California Code of Civil Procedure Section 1021.5.

88. The attorneys' fees provision for a prevailing spam recipient is typical of consumer protection statutes and supported by Code of Civil Procedure § 1021.5. By prosecuting this action, Plaintiffs expect to enforce an important right affecting the public interest and thereby confer a significant benefit on the general public or a large class of persons. The necessity and financial burden of private enforcement is such as to make the award appropriate, and the attorneys' fees should not, in the interest of justice, be paid out of the recovery of damages.

## PRAYER FOR RELIEF

### (Jointly and Severally Against All Defendants)

A. Wherefore, Plaintiffs pray for judgment against Defendants as follows:

B. For a decree that Defendants have engaged in the unlawful conduct alleged herein;

C. For liquidated damages of $1,000 per unlawful email message pursuant to Business & Professions Code § 17529.5(b)(1)(B)(ii) for a total of at least $452,000.00;

D. For attorneys' fees pursuant to California Business & Professions Code § 17529.5(b)(1)(C) and California Code of Civil Procedure § 1021.5.

E. For costs, and pre-judgment and post-judgment interest; and

F. For any and all such other and further relief that this Court may deem just and proper.

ANDERSON & JUNG

Date: October 2, 2019

BY: *J. Valfrid Anderson*
Thomas Valfrid Anderson
*Attorneys for Plaintiffs JAMES ANDREWS, CARMEN ANDREWS AND EMILY PARKS*

15
COMPLAINT

# DEMAND FOR JURY TRIAL

Plaintiffs hereby request a trial by jury.

                                        ANDERSON & JUNG

Date:  October 2, 2019             BY: *[signature]*
                                        Thomas Valfrid Anderson
                                        *Attorneys for Plaintiffs JAMES ANDREWS, CARMEN ANDREWS AND EMILY PARKS*